746 S.E.2d 347

**The STATE, Respondent,**

v.

**Gregg Gerald HENKEL, Appellant.**

**Appellate Case No. 2011–184986.
No. 5159.**

Court of Appeals of South Carolina.

Heard March 6, 2013.
Decided July 10, 2013.
Rehearing Denied Aug. 22, 2013.

C. Rauch Wise, of Greenwood, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Attorney General William M. Blitch, Jr., both of Columbia, for Respondent.

LOCKEMY, J.

Gregg Henkel argues the trial court erred in denying his motion to dismiss his indictment for driving under the influence (DUI). Henkel contends the South Carolina Highway Patrol (SCHP) failed to comply with section 56–5–2953 of the South Carolina Code (2006), which requires the arresting officer to provide videotaping of the defendant's conduct at the incident site. We reverse.

**FACTS/PROCEDURAL BACKGROUND**

Around 1:00 a.m. on January 19, 2008, Lillie Chastain called 911 and reported a motorist driving a truck erratically on I–385 in Greenville County. Chastain followed the truck until it hit a bridge and overturned into a ditch. She observed the driver get out of the truck and jump over a fence. Sergeant Wesley Hiott of the SCHP arrived on the scene and organized a search for the driver. Officers were unable to locate the driver, and the scene was cleared.

Around 4:00 or 5:00 a.m., Sergeant Hiott responded to a call indicating the possible driver of the truck had been located on I–385. When he arrived on the scene, Sergeant Hiott pulled

his patrol car to the front of the line of emergency vehicles on the side of the interstate. Thereafter, Sergeant Hiott found Henkel being examined by EMS in an ambulance behind his patrol car. Sergeant Hiott got into the ambulance with Henkel and could smell alcohol. Sergeant Hiott read Henkel his *Miranda* rights and performed a horizontal gaze nystagmus (HGN) test inside the ambulance. After performing the HGN test, Sergeant Hiott concluded Henkel was under the influence and moved him from inside the ambulance to the side of his patrol car. There, Sergeant Hiott had Henkel recite his ABCs.[1] Henkel failed the ABC test and admitted to Sergeant Hiott he was the driver of the wrecked truck. Henkel was arrested and placed in Sergeant Hiott's patrol car. Once inside the patrol car, Sergeant Hiott turned the dashboard video camera to face Henkel and read him his *Miranda* rights again.

Henkel was indicted for DUI and a trial was held in February 2011. Prior to trial, Henkel moved to dismiss the indictment on the ground that neither the field sobriety tests nor the initial *Miranda* warning were videotaped as required by section 56–5–2953 of the South Carolina Code. The trial court reserved ruling on the motion until all of the testimony was presented.

Sergeant Hiott testified he activated the patrol car's video camera and his microphone by the remote control on his belt. The record indicates this occurred after Sergeant Hiott read Henkel his *Miranda* rights in the ambulance but before he administered the HGN test. Sergeant Hiott testified he activated the camera as soon as it was practicable. Two versions of the videotape from the incident site were admitted into evidence. In the defense's version (Court's Exhibit 1), the videotape includes audio of the HGN and ABC tests but does not include video because these tests were not administered in front of Sergeant Hiott's patrol car where the video camera was aimed. The State's version (State's Exhibit 2) of the videotape is nearly identical to Court's Exhibit 1 but does not begin until after the HGN test. Thus, the videotapes in

---

1. Sergeant Hiott did not have Henkel perform any walking or balancing tests because Henkel indicated his leg was injured.

evidence do not include any video or audio of the initial *Miranda* warning, or any video of the HGN or ABC tests.

At the conclusion of the testimony, Henkel renewed his motion to dismiss. The trial court denied Henkel's motion based on "the totality ... [of] the evidence." The trial court noted Sergeant Hiott testified he activated the video camera as soon as practicable. The trial court further found the HGN and ABC tests "don't cry out for video representation ... [t]hey cry out for audio representation on the ABCs." Based on the tests given, the trial court determined the videotape "met the requirements of the law."

The jury found Henkel guilty of DUI, and he was sentenced to three years in prison suspended upon the service of three months and thirty months of probation. This appeal followed.

## STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only." *State v. Baccus,* 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006) (citing *State v. Wilson,* 345 S.C. 1, 5, 545 S.E.2d 827, 829 (2001)). "This [c]ourt is bound by the trial court's factual findings unless they are clearly erroneous." *Id.* (citing *State v. Quattlebaum,* 338 S.C. 441, 452, 527 S.E.2d 105, 111 (2000)).

## LAW/ANALYSIS

Henkel argues the trial court erred in denying his motion to dismiss his DUI indictment because the State failed to produce a videotape that complied with section 56-5-2953 of the South Carolina Code. The State contends Sergeant Hiott activated the video camera as soon as practicable, and the videotape, while capturing only audio of the field sobriety tests, was sufficient to show Henkel's conduct at the incident site. We reverse the trial court's decision.

### I. Applicable Law

Subsection 56-5-2953(A) provides:

(A) A person who violates Section 56-5-2930, 56-5-2933, or 56-5-2945 must have his conduct at the incident site and the breath test site videotaped.

(1) The videotaping at the incident site must:

(a) begin not later than the activation of the officer's blue lights and conclude after the arrest of the person for a violation of Section 56–5–2930, 56–5–2933, or a probable cause determination that the person violated Section 56–5–2945; and

(b) include the person being advised of his *Miranda* rights before any field sobriety tests are administered, if the tests are administered.

S.C.Code Ann. § 56–5–2953(A) (2006).[2] Subsection (B) of section 56–5–2953 outlines several statutory exceptions that excuse noncompliance with the mandatory videotaping requirements. Pursuant to subsection 56–5–2953(B),

[f]ailure by the arresting officer to produce the videotapes required by this section is not alone a ground for dismissal ... if the arresting officer submits a sworn affidavit certifying that the videotape equipment at the time of the arrest, probable cause determination, or breath test device was in an inoperable condition, stating reasonable efforts have been made to maintain the equipment in an operable condition, and certifying that there was no other operable breath test facility available in the county or, in the alternative, submits a sworn affidavit certifying that it was physically impossible to produce the videotape because the person needed emergency medical treatment, or exigent circumstances existed. Further, in circumstances including, but not limited to, road blocks, traffic accident investigations, and citizens' arrests, where an arrest has been made and the videotaping equipment has not been activated by blue lights, the failure by the arresting officer to produce the videotapes required by this section is not alone a ground for dismissal. However, as soon as videotaping is practicable in these circumstances, videotaping must begin and conform with the provisions of this section. Nothing in this section prohibits the court from considering any other valid reason for the failure to produce the videotape based upon the totality of the circumstances; nor do the provisions of this section prohibit the person from offering evidence relating to the

2. Section 56–5–2953 was amended effective February 10, 2009. *See* Act No. 201, 2008 S.C. Acts 1682–85. The amended statute is not applicable to Henkel's January 19, 2008 arrest.

arresting law enforcement officer's failure to produce the videotape.

S.C.Code Ann. § 56–5–2953(B).

■ "Our appellate courts have strictly construed section 56–5–2953 and found that a law enforcement agency's failure to comply with these provisions is fatal to the prosecution of a DUI case." *Town of Mt. Pleasant v. Roberts,* 393 S.C. 332, 346, 713 S.E.2d 278, 285 (2011) (citing *City of Rock Hill v. Suchenski,* 374 S.C. 12, 17, 646 S.E.2d 879, 881 (2007) (holding that "dismissal of the DUAC charge is an appropriate remedy provided by section 56–5–2953 where a violation of subsection (A) is not mitigated by subsection (B) exceptions"); *Murphy v. State,* 392 S.C. 626, 630, 709 S.E.2d 685, 687 (Ct.App.2011) (recognizing the State's noncompliance with section 56–5–2953, which is not mitigated by a statutory exception, warrants dismissal)). "[T]he Legislature clearly intended for a *per se* dismissal in the event a law enforcement agency violates the mandatory provisions of section 56–5–2953." *Id.* at 348, 713 S.E.2d at 286.

## II. Analysis

■ Subsection 56–5–2953(A)(1) requires that a person who drives under the influence must have his conduct at the incident site videotaped. Under subsection 56–5–2953(A)(1)(a), the videotaping must "begin not later than the activation of the officer's blue lights." Sergeant Hiott testified his patrol car was equipped with front and rear blue lights, which could be activated independently of each other, but the car's video camera turns on only when the front blue lights are activated. When he arrived at the scene, Sergeant Hiott activated only his rear blue lights. Because the event that subsection 56–5–2953(A)(1)(a) sets as the latest point in time when videotaping must begin—activation of the front blue lights that turn on the camera—never occurred, the failure to videotape the *Miranda* warnings did not violate subsection 56–5–2953(A)(1).

Subsection 56–5–2953(B) (2006) provides that "in circumstances including, but not limited to . . . traffic accident investigations, . . . where an arrest has been made and the videotaping equipment has not been activated by blue lights, the

failure by the arresting officer to produce the videotapes required by this section is not alone a ground for dismissal." The next sentence of subsection (B) qualifies that provision with two requirements: "However, as soon as videotaping is practicable in these circumstances, videotaping must begin and conform with the provisions of this section."

■ This is a case in which the videotaping equipment was not activated by blue lights. The trial court made a factual finding that Sergeant Hiott activated his patrol car's video as soon as practicable. There is evidence to support this finding, and under our standard of review, we are bound by it. However, the requirement in subsection 56–5–2953(B) that the videotaping "conform with the provisions of this section" refers back to subsection (A). Subsection 56–5–2953(A)(1)(b) requires that the videotaping at the incident site "include the person being advised of his *Miranda* rights before any field sobriety tests are administered, if the tests are administered." Sergeant Hiott performed field sobriety tests after he started videotaping. Because the videotape did not include him giving Henkel *Miranda* warnings, it did not conform to the provisions of section 56–5–2953. Therefore, the trial court was required to dismiss the charge,[3] and it erred by not doing so.

**REVERSED.**

FEW, C.J., concurs.

GEATHERS, J., dissenting.

For the following reasons, I would affirm Appellant's conviction for DUI.

I agree with the majority's analysis that a key determination in this case is whether the officer activated his patrol car's video recording equipment as soon as was practicable, such that the officer's delay in initiating the recording (non-compliance with subsection 56–5–2953(A)) was excused pursuant to an exception within subsection 56–5–2953(B). However, I disagree with the majority's conclusion that when this exception is invoked that an officer must still strictly comply with

---

**3.** Because the omission of the *Miranda* warnings requires dismissal, it is not necessary for us to consider the significance of the alleged failure to videotape Henkel's conduct.

subsection (A). To so construe the exception would effectively eviscerate it. *See State v. Hercheck,* 403 S.C. 597, 743 S.E.2d 798 (2013) ("[E]very word, clause, and sentence must be given some meaning, force, and effect, if it can be done by any reasonable construction" (citation omitted)). Further, the majority's interpretation disregards the plain meaning of subsection (B). In my view of the terms of this provision, when the exception is properly invoked an officer must, *from that point forward,* comply with all applicable recording requirements. *See* § 56–5–2953(B) *("[A]s soon as is practicable* in these circumstances, *videotaping must* begin and *conform* with the provisions of this section." (emphases added)). Accordingly, the initiation of the videotaping and conformance must each begin as soon as is practicable. *Id.* In the instant matter, it was not practicable for the officer to capture video evidence of Appellant receiving his initial *Miranda* warning or performing the HGN or ABC tests while Appellant was inside the ambulance.

Additionally, I believe that a complete recording of events "at the incident site," as required by subsection (A), was excused due to the "totality of the circumstances" exception within subsection (B). *See* § 56–5–2953(A) (requiring "videotaping *at* the incident site"); § 56–5–2953(B) (providing that "[n]othing in this section prohibits the court from considering *any other valid reason* for the failure to produce the videotape based upon the *totality of the circumstances.*" (emphases added)). Notably, this case did not involve a typical DUI investigation and subsequent arrest at or near the site of a traffic stop. Instead, this case involved a report of an erratic driver, the erratic driver's collision with a bridge and overturning of his vehicle, and his subsequent fleeing on foot and jumping a fence. Thus, when the officer first encountered the suspect *four hours after the accident, inside of an ambulance,* and after the suspect had *wandered down the middle of the highway back toward* the site of the wreck that was cleared hours earlier, the totality of these circumstances did not require video recording, at least not as contemplated by subsection (A) for a typical DUI stop and investigation.

Accordingly, the totality of the circumstances did not require a video recording in strict compliance with subsection (A). Here, the produced video recording still began as soon as

was practicable and included audio of the HGN and ABC tests. Thus, in light of subsection (B) and the totality of the circumstances, the produced recording was sufficient.

For these reasons, I respectfully dissent.